1  **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2  Name ___Hobson_____Timothy_____
                (Last)              (First)              (Initial)

3  Prisoner Number ___F03140_____

4  Institutional Address __Mule Creek State Prison_____

5  P.O. Box - 409020, Ione Ca. 95640.

6  ===============================================================

7  **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**

8  Timothy Hobson
   (Enter the full name of plaintiff in this action.)

9                                    CV  07    5832

                    vs.                Case No. _____
10                                     (To be provided by the clerk of court)

11  Rosanne Campbel / warden
                                       **PETITION FOR A WRIT**
                                       **OF HABEAS CORPUS**
12  _____

13  _____

14  (Enter the full name of respondent(s) or jailor in this action)

15

16  ========= Read Comments Carefully Before Filling In =========

17  When and Where to File

18        You should file in the Northern District if you were convicted and sentenced in one of these

19  counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20  San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21  this district if you are challenging the manner in which your sentence is being executed, such as loss of

22  good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were not convicted and sentenced in

24  one of the above-named fifteen counties, your petition will likely be transferred to the United States

25  District Court for the district in which the state court that convicted and sentenced you is located. If

26  you are challenging the execution of your sentence and you are not in prison in one of these counties,

27  your petition will likely be transferred to the district court for the district that includes the institution

28  where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

1  Who to Name as Respondent

2       You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6       If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now and the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11       1. What sentence are you challenging in this petition?

12            (a)    Name and location of court that imposed sentence (for example; Alameda

13                   County Superior Court, Oakland):

14            Superior Court                    Santa Clara

15            Court                             Location

16            (b)    Case number, if known ___CC462238___

17            (c)    Date and terms of sentence _6-16-2005//225 years to life._

18            (d)    Are you now in custody serving this term? (Custody means being in jail, on

19                   parole or probation, etc.)          Yes ✓     No _____

20                   Where?

21                   Name of Institution: _Mule Creek State Prison_

22                   Address: _P.O. Box - 409020, Ione Ca. 95640_

23       2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  lewd and lascivious act on a child under age of 14, in

27  violation of Penal code section 288, subdivision (a).

28

PET. FOR WRIT OF HAB. CORPUS        - 2 -

3. Did you have any of the following?

  Arraignment:         Yes ✓  No _____

  Preliminary Hearing:      Yes ✓  No _____

  Motion to Suppress:      Yes ✓  No _____

4. How did you plead?

  Guilty _____  Not Guilty ✓  Nolo Contendere _____

  Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

  Jury ✓  Judge alone _____  Judge alone on a transcript _____

6. Did you testify at your trial?      Yes _____  No ✓

7. Did you have an attorney at the following proceedings:

  (a)  Arraignment      Yes ✓  No _____

  (b)  Preliminary hearing   Yes ✓  No _____

  (c)  Time of plea     Yes ✓  No _____

  (d)  Trial        Yes ✓  No _____

  (e)  Sentencing      Yes ✓  No _____

  (f)  Appeal       Yes ✓  No _____

  (g)  Other post-conviction proceeding Yes _____  No ✓

8. Did you appeal your conviction?   Yes ✓  No _____

  (a)  If you did, to what court(s) did you appeal?

    Court of Appeal     Yes _____ No _____

    Year: 2006   Result: affirmed the judgment

    Supreme Court of California  Yes _____ No _____

    Year: 2006   Result: denied

    Any other court      Yes _____ No ✓

    Year: N/A   Result: _____ N/A

  (b)  If you appealed, were the grounds the same as those that you are raising in this

1    petition?                                    Yes _____    No __✓__

2    (c)    Was there an opinion?                  Yes _____    No __✓__

3    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                  Yes _____    No __✓__

5           If you did, give the name of the court and the result:

6                        N/A

7    _____

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?          Yes _____    No __✓__

10       [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition. You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15   U.S.C. §§ 2244(b).]

16   (a)    If you sought relief in any proceeding other than an appeal, answer the following

17          questions for each proceeding. Attach extra paper if you need more space.

18          I.    Name of Court: California Supreme Court

19                Type of Proceeding: Petition for review

20                Grounds raised (Be brief but specific):

21                a. cruel and / or unusual punishment

22                b. sentence in excess of law

23                c.

24                d.

25                Result: denied                          Date of Result: 1-3-2007

26          II.   Name of Court: N/A

27                Type of Proceeding: N/A

28                Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

a. _____

b. _____

n / a

c. _____

d. _____

Result: _____ Date of Result: _____

III.    Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a. _____

b. _____

n / a

c. _____

d. _____

Result: _____ Date of Result: _____

IV.    Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a. _____

b. _____

n / a

c. _____

d. _____

Result: _____ Date of Result: _____

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No ✓

Name and location of court: _____ n / a _____

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to

support each claim. For example, what legal right or privilege were you denied? What happened?

Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

GROUND FOR RELIEF, 1. Petitioner's sentence of 225 years to life, violates constitutional prohibitions against cruel and / or unusual punishment:;In violation of the 8th amendment to the constitution.

a. Supporting Facts:

In the present case petitioner received a total sentence of 225 years to life imprisonment. This was based upon the court's imposition of nine consecutive terms of 25 years to life, pursuant to the California Three Strikes Law. The nature of petitioner's present crime, while certainly serious and reprehensible, simply do not warrant the draconian punishment of a 225 years to life sentence: Fore more facts and law in support of ground 1, see brief attached as appendix-A, at pages 1 through 13 and 14 through 26.

b. Supporting cases, rules, or other authority in support of ground 1: Gregg V. Georgia, (1976) 428 U.S. 153,173, 96 S.ct 2909; Enmund V.FloridA, (1982) 458 U.S. 782, 801, 102 S. ct 3368.

GROUND FOR RELIEF, 2. The Three Strikes Law does not authorize consecutive terms of 25 years to life per count: Therefore petitioner's sentence is a violation of due process, as protected under the fifth and fourteenth amendments of the federal constitution.

a. Supporting Facts:

Following a jury trial, on nine counts of committing a lewd act upon a child: Immediately thereafter, the court sentence petitioner to nine consecutive terms of 25 years to life, pursuant to the Three Strike Law. Petitioner's sentence is in excess of that authorized by law: For more facts and law in support of ground 2, see brief attached as appendix-A, at pages 1 through 13 and 27 through 36.

b. Supporting cases, rules, or authority in support of ground 2, Wasko V. Vasquez (9th Cir 1987) 820 F.2d 1090: People V. Scott (1994) 9 Cal 4th 331, 354- 355: People V. Zito (1992) 8 Cal App 4th 736, 741 - 742.

1        List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3    of these cases:

4    _____

5                              n / a

6    _____

7    Do you have an attorney for this petition?                              Yes_____        No _✓_

8    If you do, give the name and address of your attorney:

9    _____

10       WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13   Executed on _11- 6 -07_                    _Timothy  Hobson_

14                  Date                                      Signature of Petitioner

15

16

17

18

19

20   (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS            - 7 -

## PROOF OF SERVICE
(C.C.P. §§ 1013 (A); 2015.5; 28 U.S.C. §1746)


I, Timothy Hobson , am over the age of eighteen (18) years, and I am a party to the within cause of action. My address is as follows:


Timothy Hobson
Mule Creek State Prison
P.O.Box-409020
Ione, California. 95640.


On, 11-6-07    , I served the following documents: A true copy of the attached; PETITION FOR WRIT / MOTION FOR COUNSEL / APPLICATION TO PROCEED IN FORMA PAUPERIS / AND BRIEF IN SUPPORT OF WRIT


individuals by deposing a correct copies thereof in the United States mail in Ione California with postage fully prepaid, addresses as follows:


Attorney General of California
1300 "I" Street, Suite 125
P.O.Box- 944255
Sacramento, Ca. 94244-2550


I have read the above statements and declare under the penalty of perjury of the laws of the state of California that the foregoing is true and correct.


Executed this, SIXTH    , day of , NOVEMBER , at Mule Creek State Prison, at Ione Ca. 95640.


(Signataure): Timothy Hobson

APPENDIX – A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

TIMOTHY HOBSON
     petitioner and or appellant     Case No._____

V.

ROSANNE CAMPBAL / WARDEN
     respondent;

ON PETITION FOR WRIT OF HABEAS CORPUS
IN THE NORTHERN DISTRICT OF CALIFORNIA
FOR THE STATE OF CALIFORNIA

LEGAL BRIEF IN SUPPORT OF THE
PETITION FOR WRIT OF HABEAS CORPUS

Timthy Hobson #F03140
P.O.Box-409020
Ione, Ca. 95640

Appellant was further alleged to possess 10 prior "strike" convictions for purposes of sentencing under the Three Strikes law (§ 667, subds. (b)-(i); § 1170.12). (1 CT 134-145.)

Appellant was tried by a jury in an 8-day trial commencing June 7, 2005. (1 CT 90.) On June 16, the jury reached a verdict, finding appellant guilty as charged. (1 CT 192-200, 204-205.)[2] Appellant waived a jury trial on the issue of his prior convictions and the matter was bifurcated. (1 RT 9-10, 25.) On June 20, a court trial was held on the prior convictions and the court found that appellant possessed 10 prior "strike" convictions by way of sexual offenses committed in Tennessee. (1 CT 206; 2 CT 304; see 1 CT 207-299 [prior packets].)

On October 24, 2005, appellant filed a motion asking the court to strike appellant's prior strikes on the basis of constitutional prohibitions against cruel and unusual punishment. (2 CT 311-318.) This motion was heard and denied on October 28, 2005. (2 CT 332.) Immediately thereafter, the court sentenced appellant to nine consecutive terms of 25-years-to-life, pursuant to the Three Strikes law. (2 CT 332-335.)

---

[2] It was also alleged and found true by the jury that appellant was ineligible for probation as to each count, based upon section 1203.066, subdivision (a)(8) (substantial sexual conduct with child under 14). (1 CT 192-200.)

2

ROSANNE COMPBAL/ WARDEN )
       Plaintiff and Respondent, )

v. )

TIMOTHY HOBSON, )

       Defendant and Appellant. )

## STATEMENT OF THE CASE

Appellant Timothy Hobson appeals from his convictions, following a

jury trial, on nine counts of committing a lewd act upon a child (Pen. Code[1],

§ 288, subd. (a)), resulting in a sentence of 225-years-to-life under the

Three Strikes law (§ 667, subds. (b)-(i); § 1170.12). (2 CT 334-336.)

On May 5, 2005, an information was filed against appellant. (1 CT

57-67.) An amended information was filed on June 14, 2005. (1 CT 134.)

Therein, appellant was charged with nine counts of committing a lewd act

upon a child under 14 years old, in violation of section 288, subdivision (a).

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

## STATEMENT OF APPEALABILITY

On October 28, 2005, appellant filed a timely notice of

appeal. (2 CT 336.) This appeal is from a judgment, following a jury trial,

that finally disposes of all issues between the parties and is authorized by

section 1237, subdivision (a). (2 CT 334-335.)

## STATEMENT OF FACTS

### A. Appellant's Conduct with Stephen

Stephen was born in July 1990. He was about 12 years old and living in Milpitas when he first met appellant. Appellant and Stephen's mother were coworkers at a local hardware store. (2 RT 97-98.) At some point, appellant began attending the church Stephen and his mother belonged to. (2 RT 98-99, 153.)

Beginning in February 2004, appellant and Stephen began to develop a social relationship. Sometime after this, at a time when Stephen was 13 years old, appellant asked him to help move some boxes and organize his recreational vehicle ("RV"). After obtaining his mother's permission, Stephen agreed to do this. (2 RT 100-103.) Appellant's RV was kept parked behind the church. (2 RT 104, 119.)

After they had finished working for the day, appellant asked Stephen if he wanted a massage. Stephen agreed to that and removed his shirt at appellant's suggestion. Nothing sexual occurred that day. (2 RT 105-107, 149.)

Stephen went to appellant's RV a second time to help with

4

appellant's cleaning and organizing project a week or two later. Again, after they had finished working, appellant suggested he give Stephen a massage. Stephen lay on appellant's bed with just his underwear on. (2 RT 107-108, 111.) At some point, appellant reached under Stephen's underwear and touched his penis. After Stephen turned over at appellant's direction, appellant reached under Stephen's underwear and touched Stephen's buttocks for about half a minute. Although Stephen felt uncomfortable about this, nothing was said. Afterwards, Stephen got dressed, called his father and obtained a ride home. (2 RT 111-114.)

A week or two after this, appellant saw Stephen and his mother at church. Appellant asked Stephen's mother if Stephen could again help him clean his RV and she granted permission. (2 RT 114.) After appellant and Stephen had spent some time cleaning the RV and moving things, appellant asked Stephen to go over to his bed and remove his clothes. Stephen did so, taking off his underwear at appellant's direction. While Stephen lay on the bed, appellant massaged Stephen's penis until he ejaculated. (2 RT 115-116.) After this, appellant masturbated himself until he also ejaculated. (2 RT 117.) The two then dressed and continued working in the RV. Sometime later, Stephen's father came at a prearranged time to give Stephen a ride home. (2 RT 117-118.) Stephen said that he did not tell

5

anyone what had happened because appellant asked him not to and because Stephen was afraid. However, appellant never made any threats. (2 RT 118, 150.)

A week or two later, Stephen again came over to help appellant clean his RV. After they had worked for a while, appellant directed Stephen to remove all his clothes and lie down on his bed for a massage. (2 RT 119-120.) At one point, appellant began massaging Stephen's penis. Appellant masturbated himself at the same time, having unzipped his pants and exposed himself. Both appellant and Stephen ejaculated. (2 RT 120-121.) Afterwards, the two of them dressed and did a little more work before Stephen called his father and got a ride home. (2 RT 121-122.)

A week or two later, Stephen returned to appellant's RV. After the two of them had moved some boxes, appellant had Stephen remove his clothes and appellant also took off his own clothes. Appellant masturbated himself with one hand while masturbating Stephen with the other until they both ejaculated. (2 RT 122-123.) After that Stephen drank a soda with appellant, then called his parents for a ride home. (2 RT 123.)

The next incident occurred a week or two after this. Stephen returned to appellant's RV to help move boxes and organize the RV. (2 RT 123-124.) Stephen removed all his clothes at appellant's direction while

6

appellant removed his own clothes. Appellant masturbated both himself and Stephen simultaneously. At appellant's suggestion, Stephen touched appellant's penis. Both of them ejaculated. (2 RT 124-125.) Then they got dressed and moved some more boxes. After this, Stephen called his parents and got a ride home. (2 RT 125.)

A week or two later, Stephen came over again to help appellant clean his RV. (2 RT 125-126.) After they had worked for a while, Stephen removed his clothes at appellant's direction and appellant began massaging him. Then appellant asked Stephen to massage him. Appellant exposed his penis and the two of them masturbated each other until they both ejaculated. (2 RT 126.) They worked some more afterwards, then appellant drove Stephen back home. (2 RT 126.)

About two weeks later, Stephen visited appellant again. They drove to San Jose in appellant's RV and moved some of appellant's property, then went back to Milpitas. After they returned, both appellant and Stephen removed their clothes. Appellant massaged Stephen's penis and then asked Stephen if he wanted to place his penis in appellant's mouth. Stephen did so. After Stephen removed his penis, appellant masturbated both of them until they both ejaculated. Afterwards appellant drove Stephen home. (2 RT 127-128.)

7

Stephen returned to appellant's RV one or two weeks thereafter. After they had worked for a while, they both removed their clothes and appellant massaged Stephen's penis. Appellant then asked Stephen if he could place his penis in Stephen's buttocks. Stephen agreed to that and appellant performed anal sex on him. Appellant then masturbated Stephen until he ejaculated. (2 RT 128-129.)

One or two weeks later, appellant took Stephen to a swimming pool at an RV park in Morgan Hill. (2 RT 129-131.) After Stephen went swimming, appellant asked him to share a shower stall with him. While they were showering, appellant asked Stephen to bend over so that appellant could sodomize him. However, when appellant attempted this, Stephen complained that it hurt, so appellant stopped. Appellant then asked Stephen to sodomize him and Stephen did so. The two of them then masturbated themselves until they ejaculated. (2 RT 131-133.) After that, they finished showering and appellant took Stephen home. (2 RT 133.)

Two or three weeks later, Stephen went swimming with appellant again. Stephen and appellant shared the same shower stall. Appellant masturbated Stephen until he ejaculated, then did the same to himself. (2 RT 133-135.)

8

## B. Police Investigation

Stephen's mother and father were married on May 22, 2004. (2 RT 141.) The following day, Stephen had a conversation with his pastor's wife during which she unexpectedly asked Stephen if he had been molested. Stephen then told her about his sexual activities with appellant. (2 RT 140-141, 155-156.)

After Stephen's conversation with his pastor's wife, the police were notified regarding the molestations and an investigation ensued. (2 RT 142.) Stephen was subsequently interviewed by the police. (2 RT 142.)

An investigating officer instructed Stephen to make a secretly tape-recorded phone call to appellant, who had now moved to Tennessee. (2 RT 143-144; 1 CT 122.) In this conversation, Stephen told appellant that he wanted some advice because he had had a new "experience with a friend," which was "[l]ike the one we had." (1 CT 119.) Stephen said that the new experience had not hurt as much because the friend's penis was smaller. (1 CT 119.) Stephen complained that after appellant "put [his] penis in my butt" it had "hurt for a few days, and it bled a little bit." (1 CT 120.) Stephen expressed concern "about diseases." Appellant replied that he did not have any, but suggested that Stephen might want to use "a rubber" in

9

the future. (1 CT 120, 122.) Stephen asked appellant, "Did you come

inside me?" Appellant replied that he had pulled out before ejaculating. (1

CT 125.)

Stephen said he had been thinking about suicide. Appellant

discouraged him from doing so. (1 CT 121.) Appellant told Stephen that it

was "normal" at his age to have this type of relationship and later on,

"[y]ou'll find a nice little girl someday and . . . you'll know what to do."

(1 RT 121.) Stephen asked appellant if he had ever engaged in similar acts

of sodomy with "other people." Appellant denied such acts. (1 CT 123.)

Appellant at one point asked if anyone could overhear their

conversation and Stephen replied he was alone in a room at his friend's

house. (1 CT 122.) Appellant asked if Stephen had said anything to anyone

about what they had done. Stephen replied, "I said I wouldn't, and I

haven't." (1 CT 125.)

Following this, the Sheriff's Department in Knox County, Tennessee

was asked to arrest appellant. (1 RT 45-46.) On August 10, 2004,

Detective Perry Moyers drove with other officers to a remote wooded area

where appellant lived in his RV. As the officers approached in marked

cars, appellant, standing outside his RV, spotted them and ran away. (1 RT

46-48.) The officers entered appellant's RV and searched it. (1 RT 49.)

10

Appellant was located and arrested later that evening by another police officer. (1 RT 51.)

On August 11, 2004, appellant was interviewed in Tennessee by Detectives Moyers and Koelzer. Appellant was provided with <u>Miranda</u>[3] admonitions and agreed to speak to the officers. (1 RT 53-54, 57-58; 1 CT 98.) Appellant admitted to having a sexual preference for young boys under 17, although he indicated he had sexual relationships with adult females in the past. (1 CT 98-99; see 2 CT 324.)

Appellant admitted having had sexual relations with Stephen on multiple occasions, including anal and oral sex. (1 CT 102-104.) Prior to that, appellant had befriended Stephen and sensed that Stephen was sexually attracted to him. (1 CT 101-103.) Appellant said that he left California and returned to Tennessee because he felt that Stephen was becoming too emotionally attached to him. (1 CT 107, 109, 112.) Appellant acknowledge that his sexual conduct with Stephen had been "wrong" and something which society does not approve of. (1 CT 111.)

---

[3] <u>Miranda</u> v. <u>Arizona</u> (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

11

## C. Forensic Evidence

On June 1, 2004, physician's assistant Mary Ritter performed a
Sexual Assault Response Team (SART) examination on Stephen. During
an initial interview Stephen said that he had experienced some pain with
urination at the time of the sexual conduct. (1 RT 82.) An examination for
anal penetration injuries revealed negative findings. (1 RT 84, 86.)
However, Ritter testified that anal injuries generally heal quickly and a
negative finding does not rule out the possibility of past anal penetration. (1
RT 83-84, 86.) Ritter also checked Stephen for sexually transmitted
diseases and found none. (1 RT 85.)

12

## SUMMARY OF ARGUMENT

The sentence of 225-years-to-life imposed upon appellant violated

constitutional prohibitions against cruel and unusual punishment.

(Argument I.)

The Three Strikes law does not authorize the imposition of

consecutive 25-years-to-life terms for multiple counts. (Argument II.)

13

## ARGUMENT

### I. APPELLANT'S SENTENCE OF 225-YEARS-TO-LIFE VIOLATES CONSTITUTIONAL PROHIBITIONS AGAINST CRUEL AND/OR UNUSUAL PUNISHMENT

#### A.  Introduction

In the present case appellant received a total sentence of over 225-years-to-life imprisonment.  As set forth below, appellant asserts that the draconian sentence imposed upon him is unconstitutional.

#### B.  Procedural Background

On October 24, 2005, defense counsel filed a motion asking the court to strike appellant's prior strike convictions.  Counsel argued that imposing a sentence of 225-years-to-life upon appellant would violate state and federal constitutional prohibitions against cruel and unusual punishment.  (2 CT 311-318.)  In arguing this motion at the October 28 sentencing hearing, counsel emphasized that appellant's prior strike convictions "are 30 years old" and that appellant was now 56.  (5 RT 243.)

14

The prosecutor opposed the motion, pointing out that appellant's

prior "strike" convictions involved sexual conduct with minors similar to

his present convictions and that appellant may have engaged in similar acts

in the intervening years which had not resulted in criminal convictions. (5

RT 243.)

In denying the defense motion, the court stated:

> The Court has read the entire file and the
> moving papers in mitigation which request this
> Court to strike the defendant's prior convictions
> for same or similar conduct. Even though
> they're old, the Court feels that all this does is
> prove that this man has had an entire at least
> two decades, probably longer, of being a
> predator against children. The Court feels it
> would be totally inappropriate and I'd be not
> doing my job if I were to strike those felony
> prior convictions of those children as if those
> crimes never occurred. Those victims are still
> out there, they still have memories of what Mr.
> Hobson did to them. You may say it's old,
> however, the memory of what those victims
> went through will not be forgotten by this
> Court. So motion to strike priors is denied.

(5 RT 243-244.)

15

## C. The Applicable Standards

### 1. Federal Standard

The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." A punishment is excessive in violation of the Eighth Amendment if it is "grossly out of proportion to the severity of the crime." (Gregg v. Georgia (1976) 428 U.S. 153, 173 [49 L.Ed.2d 859, 96 S.Ct. 2909].)

The cruel and unusual punishment clause of the Eighth Amendment prohibits the imposition of a penalty that is disproportionate to the defendant's "personal responsibility and moral guilt." (Enmund v. Florida (1982) 458 U.S. 782, 801 [73 L.Ed.2d 1140, 102 S.Ct. 3368].)

In Solem v. Helm (1983) 463 U.S. 277 [77 L.Ed.2d 637, 103 S.Ct. 3001], the United States Supreme Court found the imposition of a life sentence without the possibility of parole for a seventh nonviolent felony to be unconstitutional under the Eighth Amendment. A majority of the Supreme Court held:

> [A] court's proportionality analysis under the
> Eighth Amendment should be guided by
> objective criteria, including (i) the gravity of the
> offenses and the harshness of the penalty; (ii)

16

> the sentence imposed on other criminals in the
> same jurisdiction; and (iii) the sentences
> imposed for the commission of the same crime
> in other jurisdictions.

(Id., 463 U.S. at 292.)

A few years later, the Supreme Court decided Harmelin v. Michigan

(1991) 501 U.S. 957 [115 L.Ed.2d 836, 111 S.Ct. 260] and upheld the

imposition of a life sentence without possibility of parole for a defendant

who possessed over one and a half pounds of cocaine. Harmelin produced

five separate opinions. While seven justices supported a proportionality

review under the Eighth Amendment, only four favored application of all

three factors cited in Solem.

In Harmelin, Justice Scalia, joined by Chief Justice Rehnquist,

concluded Solem was wrongly decided and that the Eighth Amendment

contained no proportionality guarantee. (Harmelin v. Michigan, supra, 501

U.S. at 1001.) Justice Kennedy, joined by Justices Souter and O'Connor,

found that the Eighth amendment encompasses "a narrow proportionality

principle" (id., 501 at 997) and "does not require strict proportionality

between crime and sentence. Rather, it forbids only extreme sentences that

are 'grossly disproportionate' to the crime." (Id., 501 U.S. at 1001.)

Utilizing this restrictive analysis, Justices Souter, O'Connor and

17

Kennedy determined that Harmelin's sentence was not grossly
disproportionate to his crime. (Id., 501 U.S. at 1004-1005.) Noting that the
defendant possessed a large quantity of cocaine with a potential yield of
between 32,500 and 65,000 doses, and the "[p]ossession, use and
distribution of illegal drugs represent 'one of the greatest problems
affecting the health and welfare of our population,'" these justices also
concluded that "petitioner's crime threatened to cause grave harm to
society." (Id., 501 U.S. at 1002.)

Following Harmelin, the United States Supreme Court employed the
"grossly disproportionate test" once again, this time in addressing
California's Three Strikes law. In Ewing v. California (2003) 538 U.S. 11
[155 L.Ed.2d 108, 123 S.Ct. 1179], the defendant's current offense was
grand theft stemming from his misappropriation of three golf clubs valued
at $1,200. Based upon his recidivist history, Ewing was sentenced to 25-
years-to-life, under California law, as a third strike offender. The Supreme
Court upheld this sentence in a fractured opinion. Two members of the
Ewing majority, Justices Scalia and Thomas, took the position that the
Eighth Amendment's prohibition on infliction of "cruel and unusual
punishment" only outlaws "certain modes" of punishment and provides no
protection against disproportionate prison sentencing. (Id., 538 U.S. at 31-

32.) In Justice Scalia's minority view, lengths of prison sentences are exclusively a policy decision to be left in the hands of the Legislature. Justice Thomas wrote a short concurring opinion voicing his agreement with Justice Scalia and emphasizing his view that Solem should be overturned as wrongly decided. (Id., 538 U.S. at 32.) Four justices – Breyer, Ginsburg, Stevens and Souter – found that the Eighth Amendment encompasses a broad and basic proportionality principle that takes into account all of the justifications for penal sanctions. Applying this principle, the four dissenters found Ewing's 25-years-to-life sentence to be unconstitutionally disproportionate, given the relatively minor and nonviolent nature of his current grand theft offense. (Id., 538 U.S. at 35-53.) The balance was swayed by a three-justice plurality consisting of Justices O'Connor, Kennedy and Rehnquist, holding that the noncapital sentencing proportionality principle followed in Solem and Harmelin was correct, but finding that Ewing's present sentence did not violate that principle. (Id., 538 U.S. at 20-30.)

In sum, Solem retains continuing viability as Eighth Amendment law and as a gauge against which to measure the constitutionality of a noncapital felony sentence. The Solem analysis focuses primarily upon the gravity of the offense and the harshness of the penalty. (Solem v. Helm,

19

supra, 463 U.S. at 292.)  Nonetheless, comparative analyses of sentences
may be considered "to validate an initial judgment that a sentence is grossly
disproportionate to the crime."  (Harmelin v. Michigan, supra, 501 U.S. at
1005.)

## 2.  California Standard

The Eighth Amendment's ban on cruel and unusual punishment is
made obligatory on the states through the Fourteenth Amendment.
(Robinson v. California (1962) 370 U.S. 660 [8 L.Ed.2d 758, 82 S.Ct.
1417].)  Article I, section 17 of the California Constitution separately and
independently sets out a prohibition similar to the Eighth Amendment.
(People v. Dillon (1983) 34 Cal.3d 441, 478.)

Analysis of whether a sentence imposes cruel or unusual punishment
begins with a recognition that "in our tripartite system of government it is
the function of the legislative branch to define crimes and prescribe
punishments, and that such questions are in the first instance for the
judgment of the Legislature alone."  (In re Lynch (1972) 8 Cal.3d 410, 414
[citations omitted].)  Although the Legislature is accorded "the broadest
discretion possible in enacting penal statutes and in specifying punishment
for crime, .   .   . the final judgment as to whether the punishment it decrees

20

exceeds constitutional limits is a judicial function." (People v. Anderson (1972) 6 Cal.3d 628, 640.)

A punishment may violate Article I, section 17 of the Constitution "not only if it is inflicted by a cruel or unusual method, but also if it is grossly disproportionate to the offense for which it is imposed." (People v. Dillon, supra, 34 Cal.3d at 478.) A sentence may be deemed to be grossly disproportionate in two ways: the sentence in the abstract may constitute cruel or unusual punishment or the sentence as applied to a particular defendant might be cruel or unusual. Even if the imposition of the sentence might not be cruel or unusual in every case in which it is imposed, imposition of that sentence might be cruel or unusual as applied to a particular defendant. (People v. Superior Court (Beasley) (1984) 159 Cal.App.3d 131, 134-135.) As explained below, the imposition of a sentence of 225-years-to-life in the present case constitutes cruel and/or unusual punishment.

## D. Applicant's Sentence Constitutes Cruel And/Or Unusual Punishment

In the present case appellant received a total sentence of 225-years-to-life imprisonment. This was based upon the court's imposition of nine

21

consecutive terms of 25-years-to-life, pursuant to the Three Strikes law
(§ 667, subds. (b)-(i); § 1170.12). (2 CT 332-335.) Appellant asserts that
this draconian sentence amount to constitutionally prohibited cruel and
unusual punishment based upon the facts and circumstances presented
herein.

Appellant's probation report indicates that he was born in 1949 and
was 55 years old at the time of the present offenses. (2 CT 320.) From
2000 to 2004, appellant was gainfully employed as a sales clerk at a
hardware store. (2 CT 331.) Prior to that he had held other sales-related
jobs in Tennessee. (2 CT 331.)

Appellant has had a troubled life. He had grown up with a cleft
palate, which impaired his speech and resulted in his being teased and
beaten up by other children. (2 CT 323-324.) The cleft palate was
ultimately corrected by surgery when appellant was 17 years old. (2 CT
323.) As an adult, appellant suffered from depression, alcoholism and
addiction to pain medications. (2 CT 324-325.)

In his interview with Detective Moyers, shortly following his arrest,
appellant readily admitted his guilt and expressed remorse for his conduct.
Appellant acknowledged that what he had done had been "wrong" and that
"society . . . does not accept" the type of behavior which he had engaged

22

in. (1 CT 111.) Appellant said that he left California because he felt that Stephen was becoming emotionally attached to him and appellant wanted to "back away" from a problematic situation. (1 CT 107.)

At the time of sentencing, appellant submitted character references from three individuals, including the mayor of the City of Milpitas, attesting to appellant's charitable activities at church and his involvement in the Knights of Columbus. (Appellant's Second Motion to Augment the Record, dated February 15, 2006, Exhs. A, B and C.) Milpitas Mayor Jose Esteves discussed appellant's volunteer charitable activities and his donation of his services as a handyman. Mayor Esteves states "that Mr. Hobson has good character and attitude in him; he can be very helpful to communities and his friends." (Id., Exh. A.) Todd Robinson, in his letter, talks about appellant's volunteer work in the church and for the Knights of Columbus. He stated that appellant "assisted the local Knights of Columbus Council in raising funds for children with mental retardation, cooking chapter wide [sic] meals for local members, and running local meetings of this charitable organization." Robinson also described appellant's providing volunteer physical labor for local church projects. (Id., Exh. B.) Jack Libera also described appellant's volunteer work in the Knights of Columbus. (Id., Exh. C.) Defense counsel also presented the

23

judge with educational certificates appellant had recently received for completing a series of adult education courses in health and art. ((Id., Exh. D.)

The nature of appellant's present crimes, while certainly serious and reprehensible, simply do not warrant the draconian punishment of a 225-years-to-life sentence. Appellant's convictions for violating section 288, subdivision (a) did not involve the employment of any fear or force. Although Stephen, at 13 years old, was certainly not in a position to legally consent to the sexual acts engaged in, Stephen's testimony indicates that he willingly returned to visit appellant again and again with the expectation that they would mutually engage in sexual activities together. The victim suffered no physical injuries beyond those inherent in the sexual acts themselves. Physician's assistant Mary Ritter, who testified for the prosecution as a medical expert, stated that she performed a physical examination on Stephen and observed no evidence of physical injury as a consequence of appellant's conduct. (1 RT 82, 84, 86.)

People v. Estrada (1997) 57 Cal.App.4th 1270, in addressing the analogous question of whether the application of section 667.61 (the "One Strike law") amounted to cruel and unusual punishment by mandating a sentence of 25-years-to-life for rape committed during a burglary, found

24

only two states which provided comparable sentences for aggravated rape: Louisiana (LWOP) and Washington (minimum 20 years). (Id. at 1282; see People v. Alvarado (2001) 87 Cal.App.4th 178, 200.) Even if there are a few other states with sentencing schemes as draconian as California's, it would not save the California framework. "[I]f the challenged penalty is found to exceed the punishments decreed for the offense in a significant number of those jurisdictions, the disparity is a further measure of its excessiveness." (In re Lynch, supra, 8 Cal.3d at 425.)

Appellant's sentence of 225-years-to-life is many multiples of the 25-years-to-life sentence imposed on an individual who commits a cold-blooded premeditated murder. (§ 190, subd. (a).) A defendant who commits a second degree murder in California receives a sentence of 15-years-to-life (§ 190, subd. (a)), a small fraction of the sentence imposed upon appellant for his present offenses. By even starker contrast, a defendant who is found to have engaged in continuous repetitive sexual molestation of a child he resides with is exposed to a maximum determinate sentence of only 16 years in California, pursuant to section 288.5.

Under no principled analysis can appellant be viewed as posing a greater danger and menace to society than a murderer. Given Stephen's voluntary participation in the sexual activity at issue, appellant's culpability

25

is more in line with the section 288.5 offender who is subject to a 16-year
maximum term. As stated in Dillon, "a comparison of the challenged
penalty with those proscribed in the same jurisdiction for more-serious
crimes . . . is particularly striking when a more serious crime is punished
less severely than the offense in question . . . ." (People v. Dillon, supra,
34 Cal.3d at 487, fn. 38 [emphasis omitted]; In re Foss (1974) 10 Cal.3d
910, 925-926.)

## E. Appellant's Sentence Should Be Reduced

It is obvious that the 225-years-to-life sentence imposed in this case
is grossly disproportionate to appellant's crimes and personal circumstances
and therefore constitutes unconstitutional cruel and/or unusual punishment
As noted above, appellant believes that his level of culpability is
approximately equal to, and certainly no greater than, a residential serial
child molester, for which the punishment, pursuant to section 288.5, is a
maximum of 16 years.

Appellant's sentence should be reduced by this Court.

26

## II. THE THREE STRIKES LAW DOES NOT AUTHORIZE CONSECUTIVE TERMS OF 25-YEARS-TO-LIFE PER COUNT

The trial court imposed nine consecutive 25-years-to-life terms on appellant. (2 CT 332-335.) Appellant submits that his case must be remanded for resentencing because the Three Strikes law does not authorize consecutive terms of 25-years-to-life per count.[4] Punishment which is imposed in excess of that authorized by law constitutes a violation of due process, as protected under the Fifth and Fourteenth Amendments of the federal constitution. (Wasko v. Vasquez (9th Cir. 1987) 820 F.2d 1090.)

Appellant's trial counsel did not object to this error at the sentencing hearing. However, because this error involved an unauthorized sentence that could not statutorily be imposed under any circumstance, such error was clearly not waived by any nonobjection on the part of defense counsel. (People v. Scott (1994) 9 Cal.4th 331, 354-355; People v. Zito (1992) 8 Cal.App.4th 736, 741-742.)

The manner in which the sentence is to be calculated in a third strike

---

[4] Appellant acknowledges that arguments similar to the present involving the Three Strikes law were rejected in People v. Cartwright (1995) 39 Cal.App.4th 1123, 1141-1143; People v. Ingram (1995) 40 Cal.App.4th 1397, 1406-1409; and People v. Thomas (1997) 56 Cal.App,4th 396, 399-403). Appellant respectfully submits that these cases were incorrectly decided based upon the argument set forth herein.

27

case is found in section 1170.12, subdivision (c)(2), which provides:

> (2)(A) If a defendant has two or more
> prior felony convictions, as defined in
> paragraph (1) of subdivision (b), that have been
> pled and proved, the term for the current felony
> conviction shall be an indeterminate term of life
> imprisonment with a minimum term of the
> indeterminate sentence calculated as the greater
> of
>
> (i) three times the term otherwise
> provided as punishment for each current felony
> conviction subsequent to the two or more prior
> felony convictions, or
>
> (ii) twenty-five years or
>
> (iii) the term determined by the court
> pursuant to Section 1170 for the underlying
> conviction, including any enhancement
> applicable under Chapter 4.5 (commencing with
> Section 1170) of Title 7 of Part 2, or any period
> prescribed by Section 190 or 3046.
>
> (B) The indeterminate term described in
> paragraph (A) of paragraph (2) of this
> subdivision shall be served consecutive to any
> other term of imprisonment for which a
> consecutive term may be imposed by law. Any
> other term imposed subsequent to any
> indeterminate term described in paragraph (A)
> of paragraph (2) of this subdivision shall not be
> merged therein but shall commence at the time
> the person would otherwise have been released
> from prison.

The above-quoted language indicates that consecutive terms of 25-years-to-

28

life in a multiple-count case are not authorized.

First, subdivision (c)(2)(A)(i) describes the calculation as: "three times the term <u>otherwise</u> provided as punishment for <u>each</u> current felony conviction subsequent to the two or more prior felony convictions. . . ." (Emphasis added.) The phrase "otherwise provided as punishment for each current felony conviction" is a reference to the sentencing scheme which would apply if the case were not a Three Strikes case. That sentencing scheme is found in section 1170.1, subdivision (a), which provides for a full upper, middle or lower principal term for one offense and a subordinate term of one-third the middle term for each additional offense. The third strike sentencing scheme contemplates tripling the full term for one offense and then tripling the one-third midterm for each of the other offenses. The sentence of 25-years-to-life found in subdivision (c)(2)(A)(ii) applies only if this tripling of the section 1170.1, subdivision (a) term for multiple counts results in a sentence of less than 25 years.

Second, the introductory paragraph of subdivision (c)(2)(A) likewise does not contemplate or describe a calculation of 25-years-to-life per count. The introductory paragraph of subdivision (c)(2)(A) states that "the term for <u>the</u> current felony" shall be the greater of the three calculations listed. (Emphasis added.) If subdivision (c)(2)(A) contemplated a sentence of at

29

least 25-years-to-life per count, it would have used the word "each" in place

of the word "the" in the above-quoted phrase. This point is not undercut by

the fact that the above-quoted language speaks of the term for "the current

felony" (emphasis added) in the singular. In the Penal Code "the singular

number includes the plural." (§ 7.) Subdivision (c)(2)(A) thus lists the

manner in which multiple convictions are to be calculated.

It might be argued that subdivisions (a)(6) and (a)(7) of section

1170.12 contemplate sentences of 25 years per count. These subdivisions

provide:

> (6) If there is a current conviction for
> more than one felony count not committed on
> the same occasion, and not arising from the
> same set of operative facts, the court shall
> sentence the defendant consecutively on each
> count pursuant to this section.

> (7) If there is a current conviction for
> more than one serious or violent felony as
> described in paragraph (6) of this subdivision,
> the court shall impose the sentence for each
> conviction consecutive to the sentence for any
> other conviction for which the defendant may
> be consecutively sentenced in the manner
> prescribed by law.

Both of these subdivisions defer to the language in subdivision (c)

for the actual method of calculation. Subdivision (a)(6) does so explicitly;

subdivision (a)(7) does so by referring to "the manner prescribed by law,"

30

which would be subdivision (c). The only requirement subdivisions (a)(6) and (a)(7) state is that within the formula found in subdivision (c), the sentence is to be consecutive, i.e., it cannot be concurrent. What this means is that the phrase "term otherwise provided" which is to be tripled under subdivision (c)(2)(A)(i) mandates consecutive subordinate terms and precludes concurrent terms when there are multiple present offenses.

It is important to emphasize that appellant's interpretation of the sentencing calculation for third strike cases is supported by case law which addresses the sentencing calculation in second strike cases under the Three Strikes law (§ 667, subds. (b)-(i)), as passed by the Legislature. These cases consistently and without dissent have held that when a second strike defendant is convicted in the pending case of more than one felony, <u>the sentence is double the term for one felony and double one-third the middle base term for any additional felony or felonies.</u>

The first of these second strike cases is <u>People</u> v. <u>Martin</u> (1995) 32 Cal.App.4th 656. In that case the defendant was charged with two counts of petty theft with a prior, and with one "strike" prior and several non-strike priors. He pleaded guilty and the court imposed a sentence of double the low term on one count and one-third the middle base term for the second. The People objected to the failure to double the subordinate term and

31

appealed. (Id. at 660-661.) On appeal, defendant argued the trial court was not required to impose consecutive terms for the two counts. The appellate court rejected the argument, holding that consecutive sentences were required under section 667, subdivision (c)(6). (Id. at 661-664.) It was further held that the trial court was required to double the one-third middle base term on the second count. (Id. at 665-668.)

The next case to address this point was People v. Anderson (1995) 35 Cal.App.4th 587. In that case defendant was convicted of two counts of robbery and sentenced to double the midterm of three years on one count and double one-third the middle base term on the second. (Id. at 591-592.) On appeal he argued, among other points, that it was error to double the subordinate term on the second count. (Id. at 591.) The court of appeal rejected his contention, holding the one-third midterm for the second count properly was doubled. (Id. at 601-602.)

Another case addressing the issue is People v. McKee (1995) 36 Cal.App.4th 540. In McKee, the defendant, who had one prior strike, pleaded guilty to four counts of forgery. The court imposed a sentence of 32 months on one count (double the lower term of 16 months) and three consecutive terms of 16 months (double one-third the midterm) on the other three counts. (Id. at 543-545.) The court of appeal upheld this method of

32

calculating the sentence. (Id. at 546-548.)

The next case was People v. Hill (1995) 37 Cal.App.4th 220, wherein the defendant, who had a single prior strike, was convicted of possession of cocaine and petty theft with a prior. The trial court imposed a term of double the lower term on the drug offense and double one-third the midterm on the theft charge. The defendant contended on appeal that the subordinate term on the theft charge should not have been doubled. (Id. at 223.) The court of appeal rejected the contention, holding that in two strike cases "the determinate term for each count should be doubled." (Id. at 227-228.)

The principle-subordinate term approach used in two strike cases applies to three strike cases as well. This becomes evident when we compare the language of the Three Strikes law which describes how to calculate terms in two strike and three strike cases. As appellant will show, the language which explains the manner in which to calculate sentencing in two strike cases is identical in crucial respects to the language which explains the manner in which to calculate a three strike sentence.

Section 667, subdivision (e)(1) and section 1170.12, subdivision (c)(1) explain how to calculate the sentence in a two strike case. Both provide: "If a defendant has one prior felony conviction that has been pled

33

and proved, the determinate term or minimum term for an indeterminate
term shall be twice the term <u>otherwise provided as punishment</u> for the
current felony conviction." (Emphasis added.) Language identical to this
underscored language is found in section 1170.12, subdivision (c)(2)(A)(i)
– the tripling calculation for three strike sentences.[5] The Three Strikes law
requires, in a two strike case, that the principal term be doubled and one-
third the midterm for the second count be doubled. (<u>People</u> v. <u>Hill</u>, <u>supra</u>,
37 Cal.App.4th at 227-228; <u>People</u> v. <u>McKee</u>, <u>supra</u>, 36 Cal.App.4th at 546-
548; <u>People</u> v. <u>Anderson</u>, <u>supra</u>, 35 Cal.App.4th at 601-602; <u>People</u> v.
<u>Martin</u>, <u>supra</u>, 32 Cal.App.4th at 665-668.) By parallel reasoning, the
identical language in section 1170.12, subdivision (c)(2)(A)(i) means, in a
three strike case, that the full term for one count is tripled. If this
calculation is greater than 25-years-to-life, it constitutes the sentence; if it is
not, the term is the greater of 25-years-to-life (subd. (c)(2)(A)(ii)) or the
term plus all enhancements (subd. (c)(2)(A)(iii)).

The two strike cases interpreting section 667, subdivisions (b)
through (i) also make clear that the language of section 667, subdivisions
(c)(6) and (c)(7) do not alter the fact that punishment for the second (and

---

[5] Section 1170.12, subdivision (c)(2)(A)(i) sets forth a calculation of "[t]hree times
the term <u>otherwise provided as punishment</u> for each current felony conviction."
(Emphasis added.)

34

any additional) current offense is calculated as one-third the midterm doubled. These cases establish that section 667, subdivisions (c)(6) and (c)(7) require consecutive, as opposed to concurrent, sentences, but subdivisions (c)(6) and (c)(7) do not specify the nature of the term which must be imposed consecutively. Instead, it is section 667, subdivision (e) which performs the latter function. (People v. Hill, supra, 37 Cal.App.4th at 227-228; People v. McKee, supra, 36 Cal.App.4th at 546-548; People v. Anderson, supra, 35 Cal.App.4th at 601-602; People v. Martin, supra, 32 Cal.App.4th at 662-663, 665-668.) Parallel reasoning applies to interpret section 1170.12, subdivision (c).

Finally, if the Three Strikes initiative really intended to impose consecutive terms of 25-years-to-life per count in third strike cases, surely it would have said so explicitly. Such a significant provision having such a considerable impact on the life of the individual offender and on the fisc of the state would not be something the initiative drafters would write obliquely and in a way which requires laborious and inconclusive cross comparison of the various subdivisions of the Three Strikes initiative. As appellant has noted, if the drafters of the Three Strikes initiative had intended a minimum sentence of 25-years-to-life per felony imposed consecutively, section 1170.12, subdivision (c)(2)(A) would use the phrase

35

"the term for each current felony", not the phrase "the term for the current felony." The latter means the term for the current felonies, since the use of a singular in a penal statute includes the plural. (§ 7; People v. Martin, supra, 32 Cal.App.4th at 668.)

The sentence of nine consecutive terms of 25-years-to-life which the court below imposed upon appellant Hobson is not authorized by the Three Strikes initiative. Accordingly, appellant's case must be remanded for resentencing with appropriate instructions to the trial court.

CONCLUSION

FOR THE REASONS STATED, THE PETITION SHOULD BE GRANTED;

DATED, 11-6-07                        Timothy Hobson

36

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*SI*

In re;
 Timothy Hobson

On Habeas Corpus.

CV 07    5832 (PR)

Case No._____

REQUEST FOR APPOINTMENT OF
COUNSEL AND DECLARATION OF
INDIGENCY.

FILED
NOV 1 6 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

    I, Timothy Habson#F03140,declare that I am the petitioner to the above
matter, that I am incarcerated at Mule Creek State Prison, and that I am
indigent and unable to afford counsel. My total assets are O and my income
is $0 per month.

    I hereby request that counsel be appointed in this matter so that my
interests my be protected by professional assistance.

    I declare under penalty of perjury that the foregoing is true and
correct and this declaration was executed on, ||- 6-`07_____, at Mule
Creek State Prison, Ione Ca.

                                    Timothy Hobson