UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY HOBSON,<br><br>    Petitioner,<br><br>    v.<br><br>ROSANNA CAMPBELL, Warden,<br><br>    Respondent.<br>_____ / | No. C 07-5832 SI (pr)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This matter is now before the court for consideration of the merits of Timothy Hobson's pro se petition for writ of habeas corpus and his motion for a stay. For the reasons discussed below, the petition will be denied and the motion for stay will be denied.

## BACKGROUND

The California Court of Appeal stated the relevant facts as follows:

> The facts of the underlying offenses are not in dispute and will be described only briefly. Beginning in January or February 2004, 13-year-old Stephen began going to defendant's motor home, which was parked behind a church, to help move boxes and clean the motor home. Defendant and Stephen's mother worked together, and all attended the same church. Defendant offered Stephen a massage and had him remove his shirt. Nothing sexual occurred that day, but Stephen went back a week later to help defendant again, and during another massage, defendant touched Stephen's penis and buttocks. Over the course of the next several months, this relationship continued. Defendant masturbated himself and Stephen, orally copulated the boy and directed him to do the same, and had anal intercourse at least twice.
>
> In May 2004, Stephen told his pastor's wife that defendant had molested him at least seven times in his motor home. This was reported to the police, and officers interviewed Stephen. He told them that the defendant put his mouth on his penis, forced him to put his mouth on defendant's penis, and put his penis in the boy's anus. The victim reported

>witnessing defendant ejaculate approximately 10 times. Defendant orally copulated the victim approximately 10 times beginning in January or February 2004 when he was 13 years old.
>
>The police had Stephen initiate a recorded telephone call to defendant who had gone to Tennessee. In the telephone call, defendant admitted having sexual contact with the victim. When the police contacted defendant in Tennessee, he admitted a sexual relationship with the boy and said he moved away because he feared the boy was falling in love with him. Defendant further admitted that over his life, he had molested more than 100 boys, preferring those under the age of 17. When defendant was arrested on August 11, 2004, in Tennessee, he was in possession of four negatives of sexually explicit photographs.

Resp. Exh. F, California Court of Appeal Opinion ("Cal. Ct. App. Opinion"), ¶. 2-3.

Hobson was convicted in Santa Clara County Superior Court of nine counts of lewd and lascivious acts on a child under 14, and was found to have suffered 10 prior convictions. See Cal. Penal Code, § 288(a), 667(b)-(i), 1170.12. On June 16, 2005, the court denied Hobson's motion to dismiss the prior strike convictions. The court then sentenced Hobson to 225 years to life in prison under the Three Strikes law, Cal. Penal Code, § § 667(b)-(i) & 1170.12. The California Court of Appeal affirmed Hobson's conviction and the California Supreme Court denied his petition for review.

On November 16, 2007, Hobson filed his federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleged that: (1) his sentence of 225 years to life amounted to cruel and unusual punishment prohibited by the Eighth Amendment and (2) his sentence violated his right to due process because it exceeded that allowed under the Three Strikes law.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Santa Clara County, in this judicial district. 28 U.S.C. §§ 84, 2241 (d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state

judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claims presented in the petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

3

**DISCUSSION**

A.     The Claims In the Petition

    1.     The Sentence Was Not Cruel and Unusual Punishment

A criminal sentence that is significantly disproportionate to the crime for which the defendant was convicted violates the Eighth Amendment's proscription against cruel and unusual punishment. See Solem v. Helm, 463 U.S. 277, 303 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth Amendment). "[O]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences will be exceedingly rare." Id. at 289-90 (citation and quotation marks omitted). "'The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.'" Ewing v. California, 538 U.S. 11, 23 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)). Under this proportionality principle, the threshold determination for the court is whether petitioner's sentence is one of the rare cases in which a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. Harmelin, 501 U.S. at 1005; Ewing, 539 U.S. at 30-31 (applying Harmelin standard). Only if such an inference arises does the court proceed to compare petitioner's sentence with sentences in the same and other jurisdictions. See Harmelin, 501 U.S. at 1005; cf. Ewing, 538 U.S. at 23. The threshold for an "inference of gross disproportionality" is quite high. See, e.g., id. at 30 (sentence of 25 years to life for conviction of grand theft (for shoplifting three golf clubs) with prior convictions was not grossly disproportionate); Harmelin, 501 U.S. at 1008-09 (mandatory sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine did not raise inference of gross disproportionality).

In determining whether the sentence is grossly disproportionate under a recidivist sentencing statute, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history." Ramirez v. Castro, 365 F.3d 755, 768 (9th Cir. 2004); see Ewing, 538 U.S. at 28. In judging the appropriateness of a

sentence under a recidivist statute, a court may take into account the government's interest not only in punishing the offense of conviction, but also its interest "'in dealing in a harsher manner with those who [are] repeat[] criminal[s].'" United States v. Bland, 961 F.2d 123, 129 (9th Cir.) (quoting Rummel v. Estelle, 445 U.S. 263, 276 (1980)), cert. denied, 506 U.S. 858 (1992). The Eighth Amendment does not preclude a state from making a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime, as may occur in a sentencing scheme that imposes longer terms on recidivists. See Ewing, 538 U.S. at 25 (upholding 25-to-life sentence for recidivist whose current conviction was for grand theft (for shoplifting three golf clubs)); Rummel, 445 U.S. at 284-85 (upholding life sentence with possibility of parole for recidivist convicted of fraudulent use of credit card for $80, passing forged check for $28.36 and obtaining $120.75 under false pretenses); Bland, 961 F.2d at 128-29 (upholding life sentence without the possibility of parole for being a felon in possession of a firearm with thirteen prior violent felony convictions, including rape and assault).

The standard of review in § 2254(d) presents an additional problem for habeas petitioners asserting Eighth Amendment sentencing claims. In Lockyer v. Andrade, 538 U.S. 63, 72-73 (2003), the Court rejected the notion that its case law was clear or consistent enough to be clearly established federal law within the meaning of 28 U.S.C. § 2254(d), except that it was clearly established that a gross disproportionality principle did apply to sentences for terms of years (as well as to the death penalty). However, the precise contours of that principle "are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id. at 73 (quoting Harmelin, 501 U.S. at 1001).

Although Andrade and Ewing seemed to shut the door on most Eighth Amendment sentencing claims from Three Strikes defendants, the Ninth Circuit opened it again in Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004), and Reyes v. Brown, 399 F.3d 964 (9th Cir. 2005).

In Ramirez, the Ninth Circuit held that a 25-to-life sentence was grossly disproportionate to the crime committed where the current crime was petty theft with a prior theft-related conviction and the two prior strike convictions were robbery convictions. Because the current

1  shoplifting episode was nonviolent and did not threaten "'to cause grave harm to society,'" the
2  crime alone would not justify the 25-to-life sentence. See Ramirez, 365 F.3d at 768 (quoting
3  Harmelin, 501 U.S. at 1003). Even adding Ramirez's prior convictions into the mix did not
4  justify the harsh sentence because Ramirez's "prior criminal history is comprised solely of two
5  1991 convictions for second-degree robbery obtained through a single guilty plea, for which his
6  total sentence was one year in county jail and three years probation." Id.  And Ramirez's
7  criminal past paled in comparison to that in Solem, Ewing, and Andrade, where the defendants
8  had been repeatedly in and out of prison, had received substantial sentences, and had been
9  convicted of multiple felonies. Ramirez, 365 F.3d at 769.

10  In Reyes v. Brown, 399 F.3d 964 (9th Cir. 2005), the Ninth Circuit considered a 26-to-life
11  sentence for a petitioner whose current conviction was for perjury for making misrepresentations
12  on a DMV driver's license application when he impersonated a friend. His prior convictions
13  were a 1981 residential burglary conviction committed as a juvenile and a 1987 armed robbery
14  conviction. The Reyes court seemed to examine the current and past convictions separately, to
15  determine whether either alone justified the harsh sentence, rather than looking at the whole
16  picture of past and current crimes together. See id. at 967 (describing analysis in Ramirez as first
17  "conclud[ing] that Ramirez' sentence did not match the gravity of the triggering offense" and
18  then "next consider[ing] Ramirez' criminal history to determine whether the extreme sentence
19  matched his prior offenses"). In Reyes, the court gave almost no weight to the prior burglary
20  conviction because the crime was committed when Reyes was a juvenile and resulted in just a
21  2-year sentence at the California Youth Authority. Id. at 968 n.5 (citation omitted); see id. at 969
22  ("given that Reyes' first strike was earned as a juvenile, the gravity of his offenses in total rests
23  heavily on his 1987 armed robbery conviction.") Reyes' 1987 armed robbery prior conviction
24  was the "sticking point in this case," as it had resulted in a 9-year sentence (of which Reyes
25  served 5 years) and there was inadequate information in the record to determine the facts of the
26  armed robbery. Id. at 968-69. The court remanded the case for the district court to develop the
27  record because "the circumstances under which Reyes committed the robbery are not sufficiently
28  developed in the record for us to determine whether the offense was a 'crime against a person'

6

or involved violence." Id. at 969. The implication was that if the armed robbery turned out to be a less serious crime, Reyes should be granted habeas relief.

In between Ramirez and Reyes, the Ninth Circuit decided another Three Strikes case and upheld a 25-to-life sentence as constitutional. See Rios v. Garcia, 390 F.3d 1082 (9th Cir. 2004). Rios shoplifted two watches having a combined value of $79.88, was chased by a loss prevention officer and was apprehended in the store parking lot after a minor struggle. Id. at 1083. Rios' current conviction was for petty theft with a prior theft-related conviction and second degree commercial burglary. His two strike convictions were from a 1987 guilty plea to two counts of robbery. The court determined that "Ewing and Andrade compel the conclusion that Rios's sentence was not grossly disproportionate to his crime in light of his criminal history." Rios, 390 F.3d at 1086. The court considered Rios' real sentence to be lighter than that imposed in Andrade because Rios had to serve only 25 years while the Andrade defendant had to serve 50 years before being eligible for parole – a difference resulting from the fact that one of Rios' two 25-to-life sentences was stayed and neither of Andrade's sentences was stayed. Rios, 390 F.3d at 1086. The court found Ramirez distinguishable: "unlike the defendant in Ramirez, Rios struggled with the loss prevention officer and tried to avoid apprehension. Additionally, his prior robbery 'strikes' involved the threat of violence, because his cohort used a knife. As did the defendants in Ewing and Andrade. . . , Rios has a lengthy criminal history, beginning in 1982, and he has been incarcerated several times." Rios, 390 F.3d at 1086. Rios' 25-to-life sentence did not offend the Eighth Amendment under the circumstances. See id.

Two more recent cases from the Ninth Circuit upheld lengthy recidivist sentences. In Nunes v. Ramirez-Palmer, 485 F.3d 432, 439 (9th Cir. 2007), the court upheld a sentence of 25-to-life for the underlying offense of petty theft with a prior conviction after finding that the petitioner's criminal history was longer, more prolific, and more violent than the petitioner's in Andrade who suffered a harsher sentence. In Taylor v. Lewis, 460 F.3d 1093, 1101-02 (9th Cir. 2006), the court also found no inference of gross disproportionality in upholding a sentence of 25-years-to-life with the possibility of parole for Taylor upon a conviction of possession of 0.036 grams of cocaine base. Taylor's two prior felony convictions for voluntary manslaughter and

7

robbery, and his past violations of probation and parole, showed a history of recidivism, violence, and a criminal record graver than that in Rummel and Andrade. Id. Taylor's offenses were also graver than those considered in Solem, where the Supreme Court invalidated a recidivist sentence. Id. at 1101.

Hobson's sentence of 225 years to life is undoubtedly a very long sentence. It is almost certain he will spend the rest of his life in prison on that sentence. Conviction for one lewd and lascivious act on a child under the age of 14 would normally result in a shorter sentence because the basic sentencing triad for that crime is 3, 6, or 8 years in prison. See Cal. Penal Code § 288(a). Hobson's very long sentence stems from the number of his offenses as well as his recidivism.

The numerosity of Hobson's crimes weighs strongly against him. He was convicted of nine counts of committing a lewd and lascivious act on a child. Over a three or four month period, 58-year old Hobson gained the trust of and had sex with an eighth grader. These current crimes are far more serious than the crimes in Andrade or Ewing or any of the post-Andrade Ninth Circuit cases. In addition, Hobson had ten prior convictions for similar offenses against children, although the convictions apparently were very old. When Hobson filed a motion to dismiss the ten prior convictions, the trial court denied the motion, finding that the prior convictions involved the same predatory conduct against children. Cal. Ct. App. Opinion, p. 2. Hobson is subject to California's Three Strikes law, which dramatically increases the mandatory sentence for a third felony offense, and his recidivist nature must be considered in evaluating the constitutionality of his sentence. Ramirez dictates that "because [the defendant] was sentenced as a recidivist under the Three Strikes law, 'in weighing the gravity' of his offense in our proportionality analysis, 'we must place on the scales not only his current felony,' but also his criminal history." Ramirez, 365 F.3d at 768 (quoting Ewing, 538 U.S. at 29). Comparing the two most recent Supreme Court cases on proportionality, Andrade and Ewing, with the facts presented here, Hobson's current crimes are far more serious than the shoplifting crimes at issue in those two cases.

In his petition, Hobson compares his case to Solem v. Helm, and argues that it is the gauge against which to measure the constitutionality of a noncapital felony offense. Petition, p. 19. The comparison to Solem does not help Hobson. The Solem defendant's "crime was one of the most passive felonies a person could commit.'" Solem, 463 U.S. at 296 (citation omitted). In contrast, Hobson has committed the "type of crime that may cause serious harm to the young victims for the rest of their lives." Cal. Ct. App. Opinion, p. 6 n.5. The Solem defendant's "prior offenses, although classified as felonies, were all relatively minor." Solem, 463 U.S. at 296-97. Hobson stands in contrast to the Solem defendant, in that Hobson's prior convictions were for serious crimes. Id. at 282.

When viewed in light of his criminal history and current felony offenses, Hobson's is not that "rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Ewing, 538 U.S. at 30 (quoting Harmelin, 501 U.S. at 1005). The California Court of Appeal's rejection of Hobson's Eighth Amendment claim was not contrary to, or an unreasonable application of, clearly established federal law. Hobson is not entitled to the writ on his Eighth Amendment claim.

### 2. Consecutive Sentences Did Not Violate Due Process

Hobson argues that his nine consecutive 25-years-to-life terms were not allowed under state law and therefore violated his right to due process. Specifically, Hobson contends that the "Three Strikes" law makes no provision for consecutive sentences under California Penal Code § 1170.12(c)(2)(A) & (c)(2)(A)(i).

A sentence that is in excess of that allowed by state law may violate due process, Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987), and therefore could support federal habeas relief. However, two other habeas rules greatly restrict any review of a state court sentence in this regard. The first principle is that federal habeas relief is not available to correct errors of state law. See Estelle v. McGuire, 502 U.S. 62, 67 (1991). The second principle is that a state court's interpretation of state law binds the federal court in a habeas corpus action. Bradshaw v. Richey,

9

546 U.S. 74, 76 (2005); Hicks v. Feiock, 485 U.S. 624, 629 (1988).

The California Court of Appeal rejected Hobson's argument that California Penal Code § 1170.12(c)(2)(A) & (c)(2)(A)(i) did not allow consecutive Three Strikes sentences. Cal. Ct. App. Opinion, ¶. 5-7 ("[C]ourts have interpreted [the language of the subdivision] to mean that each current felony conviction is sentenced separately and consecutively."). The court also held that Hobson's sentence–determined by calculating a third strike defendant's minimum/maximum on each count separately–is consistent with the "overarching intent" of the statute "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." Id. at 6, citing People v. Thomas, 56 Cal. App. 4th 396, 402-03 (Ct. App. 1997).[1] As the state appellate court noted, petitioner's contention has been uniformly and consistently rejected by California state courts. See generally, People v. Casper, 33 Cal. 4th 38, 43 (Cal. 2004) ("[T]here can be no doubt after examining the language of section 667, subdivision (c) but that consecutive sentences are required for all current felony convictions, regardless of whether a strike allegation attaches to them, if the crimes did not arise on the same occasion or under the same set of operative facts.").

This court does not review the correctness of the application of state law, and does not second-guess the California courts' determinations that the Three Strikes law does permit consecutive sentences for third strike defendants. With those points in mind, there is no merit to Hobson's claim that his right to due process was violated by the consecutive sentencing. His consecutive sentences were allowed under state law. That also means that the 225-to-life total sentence did not exceed that allowed by state law and therefore did not violate due process. Hobson is not entitled to the writ on this claim.

---

[1] The minimum/maximum refers to Cal. Pen. Code, § 667(e)(2)(A)'s requirement that a third strike defendant receive an indeterminate term, with the maximum of life imprisonment and a minimum term of the greater of three times the term otherwise provided for the offense, or 25 years, or that otherwise allowed by § 1170.

10

B.     Motion For Stay

Hobson has recently moved for a stay and abeyance of this action so that he may return to state court to exhaust several new claims. He asserts in his motion that, after filing his petition, he learned from other prisoners that he may have new claims to add to his petition. These new claims are: (1) the interview by Tennessee detectives did not include any statement by him that he had 100 previous victims, contrary to the sentencing court's observation, (2) the recording of his telephone conversation with the victim should have been challenged, and (3) trial and appellate counsel were ineffective in failing to raise those first two claims.

A district court may stay a mixed habeas petition to allow the petitioner to exhaust his unexhausted claims in state court. Rhines v. Webber, 544 U.S. 269, 277-78 (2005). In Rhines, the Court discussed the stay-and-abeyance procedure for mixed habeas petitions. Rhines cautioned district courts against being too liberal in allowing a stay because a stay works against several of the purposes of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in that it "frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings" and "undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." Rhines, 544 U.S. at 277. A stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," the claims are not plainly meritless, and there are no intentionally dilatory litigation tactics by the petitioner. Id. at 277-78. Hobson's motion falters under the first two Rhines requirements.

Hobson has not shown good cause for his failure to exhaust his claims in state court before filing his federal petition. Although he alleges that his appellate counsel failed to raise the claims, that does not explain why Hobson did not file a state habeas petition before filing his federal petition. When he filed his federal petition, he was about five months away from the AEDPA statute of limitations deadline, 28 U.S.C. § 2244(d), and had plenty of time to file a state habeas petition. That he did not learn of the existence of possible claims until the happenstance of other prisoners telling him about them does not explain why he did not learn of them sooner

nor does it speak to the issue of diligence that would show good cause for him failing to exhaust those claims before filing his federal petition.

Much more importantly, the claims for which a stay is sought are plainly meritless, such that delaying resolution of this case to wait for those claims to be exhausted would be inappropriate. Hobson does not identify the legal claim, but asserts that the court record does not support the judge's[2] observation at sentencing that Hobson admitted to Tennessee police that he had about 100 previous victims. What Hobson fails to note, however, is that previous victims were not mentioned because his attorney had successfully moved in limine to have such evidence excluded. See CT 84; RT 7-24. The court specifically ordered that evidence of Hobson's "comments about other boys, other times, other locations than this victim" be excluded and redacted from the transcript of the statement to Tennessee police. RT 13. Hobson apparently had made several statements to police trying to excuse his sexual interest in minors as a disease and that he liked boys under the age of 17. RT 14-15, 17. Defense counsel also successfully excluded evidence that, when arrested, Hobson had in his wallet four photographic negatives of young unclothed boys. RT 19. In light of the in limine ruling excluding the inflammatory statements about other minors, as well as the admonition to the Tennessee detective not to mention the prior convictions or photographs, RT 39-40, the absence of reference in the court record to Hobson saying he had about 100 previous victims does not show that the statement was not made to the detective. Moreover, if Hobson had never said to police that he had 100 victims, one would expect that he would have objected vigorously when the statement was first made at the sentencing hearing or when it was made in the court of appeal's opinion rather than needing to have it pointed out a couple of years later by another inmate.

Hobson also urges that he wants to exhaust a claim concerning the recording made by the police when the victim made a pretext telephone call to Hobson in cooperation with the police. He has not shown that such a claim would have any chance of success under state law or under the federal wiretapping law. California Penal Code § 632 makes surreptitious recordings of

---

[2] It was the prosecutor, rather than the judge, who made the comment. RT 243.

confidential communications criminal and generally inadmissible as evidence, but has an exception for recordings made by a law enforcement officer or a person acting pursuant to the direction of a law enforcement officer, Cal. Penal Code § 633.  The federal statute provides that it is not unlawful to intercept a communication if one of the parties to the communication is the interceptor or has given consent for another to intercept it.  18 U.S.C. § 2511(2)(c).  Hobson's entrapment argument is a nonstarter because that doctrine pertains to the inducement to commit a crime, not the inducement to admit that one has committed a crime.   Hobson gives no reason to believe that he would succeed with any challenge to the recording of the conversation.

Since neither of Hobson's first two new claims has any merit, it follows that he would be unable to show ineffective assistance of counsel based on the failure to pursue those claims.  Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005).  The action will not be stayed so that Hobson may exhaust his state court remedies for these claims that are patently meritless.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The motion for a stay and abeyance is DENIED.  (Docket # 10.)   The clerk shall close the file.

IT IS SO ORDERED.

DATED: October 11, 2008

_____
SUSAN ILLSTON
United States District Judge

13